# Supreme Court of Florida

_____

No. SC13-1549
_____

**J.R.,**
Appellant,

vs.

**BARBARA PALMER, etc.,**
Appellee.

[May 14, 2015]

LABARGA, C.J.

In this case we consider three questions of law certified by the United States

Court of Appeals for the Eleventh Circuit concerning the agency review

requirements for the continued involuntary admission of developmentally disabled

individuals to residential services under chapter 393, Florida Statutes (2011).  We

have jurisdiction.  See art. V, § 3(b)(6), Fla. Const.  Specifically, the Eleventh

Circuit certified the following questions:

> 1) Does "support plan" review under Fla. Stat. § 393.0651 require the
> Agency for Persons with Disabilities to consider the propriety of a
> continued involuntary admission to residential services order entered
> under Fla. Stat. § 393.11?
> 2) Is the Agency for Persons with Disabilities required, pursuant to
> Fla. Stat. § 393.0651 and/or Fla. Stat. § 393.11, to petition the circuit

court for the release from an involuntary admission order in cases where the APD determines that the circumstances that led to the initial admission have changed?

3) Does Fla. Stat. § 393.062 et. seq. provide a statutory mandate to meaningfully periodically review involuntary admissions to non-secure residential services consistent with the commitment schemes discussed in Parham v. J.R., 442 U.S. 584, 99 S. Ct. 2493, 61 L.Ed.2d 101 (1979) and Williams v. Wallis, 734 F.2d 1434 (11th Cir. 1984)?

J.R. v. Hansen (J.R. II), 736 F.3d 959, 974 (11th Cir. 2013). For the reasons we explain, we answer the first two certified questions in the negative and decline to answer the third certified question.

## FACTS AND PROCEDURAL HISTORY

J.R. is an intellectually disabled man with an IQ of 56, who functions at the level of a seven-year-old. In 2000, J.R. was charged with sexual battery in Lee County, Florida. In 2001, the circuit court concluded that J.R. was incompetent to stand trial and involuntarily committed him to the Department of Children and Family Services.[1,2] In 2004, J.R. was involuntarily admitted to nonsecure residential services under section 393.11, Florida Statutes. The involuntary admission order does not include an end date for J.R.'s involuntary admission.

---

1. Prior to October 2004, the Agency for Persons with Disabilities existed as the Developmental Disabilities Program within the Department of Children and Family Services.

2. In 2007, the Legislature authorized the use of the name Department of Children and Families. See ch. 2007-174, Laws of Fla.

Upon his admission to nonsecure residential services, J.R. was given a support plan, and that plan is periodically reviewed and revised under section 393.0651, Florida Statutes. Under section 393.0651, the Agency for Persons with Disabilities (Agency) is required to conduct an annual support plan review for each person who receives services from the Agency. As a result, while J.R. has lived in multiple group homes since his commitment, the limitations on his activities have varied—and will continue to change—with the periodic revisions to his support plan. The circuit court, however, has not held a hearing on J.R.'s continued involuntary admission since 2005.

On August 25, 2011, J.R. filed suit under 42 U.S.C. §§ 1983 and 1988 in the United States District Court for the Northern District of Florida against the Director of the Agency. Section 1983 provides a cause of action against any person who deprives another of rights under the color of law. Section 1988 governs proceedings in vindication of civil rights and provides for prevailing party attorney's fees for section 1983 claims. J.R. sought a declaratory judgment that Florida's statutory scheme for involuntarily admitting intellectually disabled persons to residential services under section 393.11, Florida Statutes, is facially unconstitutional. J.R. argued that the statutory scheme violates the Due Process Clause of the Fourteenth Amendment because it does not provide people who have been involuntarily admitted to nonsecure residential services with periodic review

of their continued involuntary confinement by a decision-maker who has authority to release them.  Both J.R. and the Agency filed motions for summary judgment.

The district court granted the Agency's motion for summary judgment and denied J.R.'s motion for summary judgment.  J.R. v. Hansen (J.R. I), No. 4:11cv417-WS, 2012 WL 1886438, at *14-15 (N.D. Fla. May 22, 2012).  The court noted that a plaintiff in a procedural due process claim "must prove three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process."  Id. at *7.  The court concluded that the first two elements—deprivation of a constitutionally protected liberty interest and state action—were "easily proved."  Id. at *7-8.  However, after analyzing section 393.11 in light of Mathews v. Eldridge, 424 U.S. 319 (1976), Parham v. J.R., 442 U.S. 584 (1979), and Williams v. Wallis, 734 F.2d 1434 (11th Cir. 1984), the court determined that the third element— constitutionally inadequate process—was not established.  J.R. I, 2012 WL 1886438 at *13.  As a result, the district court concluded that section 393.11, Florida Statutes, is constitutional.  Id. at *15.  The court explained:

> Here, the Florida Legislature has fashioned what, in essence, is a nonadversarial scheme that (1) allows section 393.11 clients and their family members or advocates to provide input into the development and annual revision of support plans that detail "the most appropriate, least restrictive, and most cost-beneficial environment for accomplishment of the objectives for client progress and a specification of all services authorized," § 393.0651; (2) authorizes [the Agency]—through the advice of specialists and without court

- 4 -

involvement—to decide what is "the most appropriate, least restrictive, and most cost-beneficial environment" suitable for a client's individual needs and behaviors; (3) authorizes [the Agency]—with client input and without court approval—to move a client to progressively less restrictive environments as the client's needs and behaviors change; and (4) places an implicit burden on [the Agency], rather than the client, to petition the court for release from an order of involuntary admission when the conditions for release are indicated.

Id. at *14.

J.R. appealed the district court's decision to the Eleventh Circuit. After explaining the elements of a claim brought under section 1983, the Eleventh Circuit concluded that "the first two elements of the test for a claim of the denial of due process are easily established here." J.R. II, 736 F.3d at 965. The Eleventh Circuit then addressed whether section "393.11 provides constitutionally adequate process" regarding review of involuntary admission orders. Id. The Eleventh Circuit noted that J.R. did not challenge the constitutionality of his initial involuntary admission. Id. at 962 n.2.

The Eleventh Circuit began its analysis by noting that "[t]he [Agency] has pointed to nothing explicit in the statute indicating that an obligation exists and has offered no evidence of procedures in place to require periodic review of the involuntary commitment status of these people." Id. at 971. Based primarily on Parham and Williams, the Eleventh Circuit determined that there are "at least four guiding principles . . . in analyzing Florida's involuntary admission to residential services scheme." Id. at 968. First, some form of periodic review is required to

- 5 -

protect against the erroneous deprivation of liberty.  Id.  "Second, adversarial judicial review is not necessary to protect against the erroneous deprivation of liberty where medical professionals are well positioned and mandated to consider the propriety of ongoing commitment."  Id.  "Third, adversarial judicial review is not necessary . . . where medical professionals are well positioned and mandated to act when an ongoing commitment is no longer proper."  Id. at 969.  And "[f]ourth, the availability of adversarial judicial review in the form of habeas proceedings serves as a backup plan to protect against erroneous deprivations of liberty."  Id.

The Eleventh Circuit expressed doubt regarding whether Florida's scheme satisfies these factors.  Id. at 971-73.  First, the Eleventh Circuit questioned whether the statutes require the Agency to periodically review involuntary admission orders.  Id. at 971.  Section 393.0651 does not explicitly require the Agency to periodically review involuntary admission orders to determine whether an admitted person continues to meet the standard for involuntary admission set out in section 393.11.  Id.  Instead, section 393.0651 requires the Agency to annually review whether the client has been placed in "the most appropriate, least restrictive, and most cost-beneficial environment for accomplishment of the objectives for client progress."  Id. at 971.  Based on this discrepancy, the Eleventh Circuit concluded that "periodic support plan reviews consider only half of the

ultimate question of whether it is necessary for someone to be involuntarily admitted to residential services." Id. at 972.

Second, the Eleventh Circuit concluded that section 393.0651 "does not provide procedures for the [Agency] if it were to decide someone should be released from an involuntary admission order." Id. The Eleventh Circuit explained that "[n]othing on the face of § 393.0651 mandates that the [Agency], having found a client to no longer be a danger to himself or to others, should petition the circuit court [for a client's release], the only body with the power to alter the order." Id. The court pointed out that other sections in chapter 393 require judicial review of "an involuntary admission order to non-secure residential services" under specific circumstances involving minors. Id. (discussing §§ 393.11(9)(b), 393.115, Fla. Stat.). The Eleventh Circuit also noted "that the Florida legislature has required periodic judicial review in other contexts," such as secure detention of intellectually disabled persons under section 916.303(3), Florida Statutes, involuntary commitment of persons with mental illness under sections 394.4655(7) and 394.467(7), Florida Statutes, and involuntary commitment of sexually violent predators under sections 394.918(1), (3), Florida Statutes. J.R. II, 736 F.3d at 972-73.

The Eleventh Circuit certified three questions to this Court because it was "not comfortable merely affirming [the district court's] ruling based on implied

obligations not explicit on the face of the statute," and the Florida Supreme Court, rather than a federal court, is "the arbiter[] of Florida law." Id. at 973. In the analysis that follows, we first set out the arguments presented by J.R. and the Agency. We then review the specific relevant provisions of chapter 393 and answer the first two certified questions in the negative. Finally, we explain why we decline to answer the third certified question.

## PARTIES' ARGUMENTS

J.R. contends that each of the certified questions should be answered in the negative. He argues that the first certified question should be answered in the negative because support plan review under section 393.0651, Florida Statutes (2011), does not require the Agency to consider the continued propriety of an involuntary admission order. J.R. then argues that the second certified question should be answered in the negative because neither section 393.0651 nor section 393.11 requires the Agency to petition the circuit court for an individual's release from an involuntary admission order when the circumstances that led to the initial involuntary admission have changed. Finally, J.R. argues that the third certified question should be answered in the negative because chapter 393 does not provide a statutory mandate for meaningful periodic review of involuntary admission orders in accordance with Parham and Williams.

- 8 -

The Agency argues that each of the certified questions should be answered in the affirmative because the obligations implicit in sections 393.0651 and 393.11 require the Agency to review the continued propriety of an initial involuntary admission order during annual support plan review and petition the circuit court if an individual's circumstances have changed to the point that involuntary admission is no longer appropriate. The Agency maintains that support plan review provides the necessary meaningful periodic review. The Agency further contends that this Court is required to interpret sections 393.0651 and 393.11 in a way that upholds their constitutionality.

### APPLICABLE LAW

Chapter 393, Florida Statutes (2011), addresses the treatment of developmentally disabled individuals. A "client" of the Agency is "any person determined eligible by the agency for services under this chapter." § 393.063(5), Fla. Stat. (2011). The Agency provides both voluntary and involuntary services to persons with developmental disabilities. See §§ 393.065, 393.11, Fla. Stat. (2011).

Section 393.11 governs the involuntary admission of developmentally disabled individuals to residential services. In order for an individual to be involuntarily admitted to residential services, the circuit court must find that:

> 1. The person is mentally retarded or autistic;
> 2. Placement in a residential setting is the least restrictive and most appropriate alternative to meet the person's needs; and

3. Because of the person's degree of mental retardation or autism, the person:

a. Lacks sufficient capacity to give express and informed consent to a voluntary application for services pursuant to s. 393.065 and lacks basic survival and self-care skills to such a degree that close supervision and habilitation in a residential setting is necessary and, if not provided, would result in a real and present threat of substantial harm to the person's well-being; or

b. Is likely to physically injure others if allowed to remain at liberty.

§ 393.11(8)(b), Fla. Stat. (2011). Within forty-five days of receiving an order involuntarily admitting a person to residential services, the Agency must "provide the court with a copy of the person's family or individual support plan and copies of all examinations and evaluations, outlining the treatment and rehabilitative programs. The agency shall document that the person has been placed in the most appropriate, least restrictive and cost-beneficial residential setting."

§ 393.11(8)(e), Fla. Stat. (2011). The circuit court that enters the initial involuntary admission order

has continuing jurisdiction to enter further orders to ensure that the person is receiving adequate care, treatment, habilitation, and rehabilitation, including psychotropic medication and behavioral programming. Upon request, the court may transfer the continuing jurisdiction to the court where a client resides if it is different from where the original involuntary admission order was issued. A person may not be released from an order for involuntary admission to residential services except by the order of the court.

§ 393.11(11), Fla. Stat. (2011). An involuntary admission order may be appealed by "[a]ny party to the proceeding who is affected by an order of the court,

- 10 -

including the agency." § 393.11(12), Fla. Stat. (2011). In addition, an involuntarily admitted person may file a petition for a writ of habeas corpus "to question the cause, legality, and appropriateness of the person's involuntary admission" at any time. § 393.11(13), Fla. (2011).

All clients of the Agency must have their support plans reviewed and revised annually. § 393.0651(7), Fla. Stat. (2011). Section 393.0651 governs support plan review for clients enrolled in the Agency's services and states that:

> Each plan must include the most appropriate, least restrictive, and most cost-beneficial environment for accomplishment of the objectives for client progress and a specification of all services authorized. The plan must include provisions for the most appropriate level of care for the client. Within the specification of needs and services for each client, when residential care is necessary, the agency shall move toward placement of clients in residential facilities based within the client's community. The ultimate goal of each plan, whenever possible, shall be to enable the client to live a dignified life in the least restrictive setting, be that in the home or in the community.

"In developing a client's annual family or individual support plan, the individual or family with the assistance of the support planning team shall identify measurable objectives for client progress and shall specify a time period expected for achievement of each objective." § 393.0651(6), Fla. Stat. (2011). "The agency shall develop and specify by rule the core components of support plans." § 393.0651(1), Fla. Stat. (2011). Clients or their parents, guardians, or client

- 11 -

advocates are permitted to administratively challenge the results of a support plan

or a revision to a support plan. § 393.0651(8), Fla. Stat. (2011).

## ANALYSIS

In the first two certified questions, this Court is asked to interpret provisions

of chapter 393, Florida Statutes. In Diamond Aircraft Industries, Inc. v.

Horowitch, 107 So. 3d 362, 367 (Fla. 2013), we explained that:

> Legislative intent is the polestar that guides our analysis regarding the construction and application of the statute. See Bautista v. State, 863 So. 2d 1180, 1185 (Fla. 2003). Our statutory analysis begins with the plain meaning of the actual language of the statute, as we discern legislative intent primarily from the text of the statute. See Heart of Adoptions, Inc. v. J.A., 963 So. 2d 189, 198 (Fla. 2007). If statutory language is "clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984) (quoting A.R. Douglass, Inc. v. McRainey, 137 So. 157, 159 (Fla. 1931)).

Further, "courts of this state are 'without power to construe an unambiguous statute

in a way which would extend, modify, or limit, its express terms or its reasonable

and obvious implications. To do so would be an abrogation of legislative

power.' " Holly v. Auld, 450 So. 2d at 219 (quoting Am. Bankers Life Assurance

Co. of Fla. v. Williams, 212 So. 2d 777, 778 (Fla. 1st DCA 1968)). When a

specific provision is not included in a statute, we have explained that:

> "[W]here the legislature has inserted a provision in only one of two statutes that deal with closely related subject matter, it is reasonable to infer that the failure to include that provision in the

- 12 -

other statute was deliberate rather than inadvertent." 2B Norman J. Singer & J.D. Shambie Singer, <u>Statutes and Statutory Construction</u> § 51:2 (7th ed. 2008). "In the past, we have pointed to language in other statutes to show that the legislature 'knows how to' accomplish what it has omitted in the statute [we were interpreting]." <u>Cason v. Fla. Dep't of Mgmt. Services</u>, 944 So. 2d 306, 315 (Fla. 2006); <u>see also</u> <u>Horowitz v. Plantation Gen. Hosp. Ltd. P'ship</u>, 959 So. 2d 176, 185 (Fla. 2007); <u>Rollins v. Pizzarelli</u>, 761 So. 2d 294, 298 (Fla. 2000).

<u>Olmstead v. FTC</u>, 44 So. 3d 76, 82 (Fla. 2010).

We reject the Agency's argument that we are required to find the implied obligations in sections 393.0651 and 393.11 because we must interpret the statutes in a way that upholds their constitutionality. Certified questions one and two ask us to interpret the provisions of section 393.0651 and 393.11 in order to assist the Eleventh Circuit in resolving this case. Certified questions one and two do not ask us to resolve the ultimate issue in this case—whether section 393.11 is facially unconstitutional. <u>See</u> <u>Internet Solutions Corp. v. Marshall</u>, 39 So. 3d 1201, 1206 (Fla. 2010) (distinguishing "the subject of the certified question from the issue of whether exercising jurisdiction over Marshall would violate due process").

### Support Plan Review

We answer the Eleventh Circuit's first certified question in the negative because support plan review under section 393.0651 does not require the Agency to consider the continued propriety of an involuntary admission order entered under section 393.11. As the Agency conceded before the Eleventh Circuit, the

- 13 -

requirements for involuntary admission are not explicitly discussed anywhere in section 393.0651.  See J.R. II, 736 F.3d at 971.

Section 393.0651 provides a comprehensive scheme regarding annual support plan review for the Agency's clients.  Section 393.0651 details who is involved in a client's annual support plan review, the factors that must be considered during the support plan review, and the order in which the various residential placement options must be considered.  Section 393.0651 also requires that the support plan establish measurable goals for client progress; support plans for clients who are public school students are coordinated with individual education plans; and the Agency promulgate rules regarding the core components of support plans.  The statutory scheme also affords the right to an administrative appeal of the decision reached following annual review of a support plan.  Even though section 393.0651(1) mandates that the Agency "shall develop and specify by rule the core components of support plans," the Agency has not pointed to any rule in its brief to this Court or the Eleventh Circuit that requires consideration of whether the elements required for involuntary admission are still satisfied during a client's annual support plan review.  See J.R. II, 736 F.3d at 971.

Nothing within the text of section 393.0651 can be construed to include consideration of the elements that must be established in order for a person to be involuntarily committed under section 393.11(8)(b).  Nor can section 393.0651 be

construed to include consideration of whether a client is a danger to himself or others to satisfy the third element for involuntary admission in section 393.11(8)(b)3. All clients of the Agency—both voluntarily and involuntarily admitted clients—receive annual support plan review. Nothing in section 393.0651 indicates that support plan review for involuntarily admitted clients differs in any way from support plan review for voluntarily admitted clients.

The Agency's reliance on section 393.0651's requirement that each support plan "must include the most appropriate, least restrictive, and most cost-beneficial environment for accomplishment of the objectives for client progress and a specification of all services authorized" does not take into account the continued appropriateness of an involuntary admission order. The text of section 393.11(8)(b)2, which sets forth the second element that must be found by a circuit judge in order for a person to be involuntarily admitted, substantially overlaps with the requirement regarding support plan review relied on by the Agency— "[p]lacement in a residential setting is the least restrictive and most appropriate alternative to meet the person's needs." If the Legislature intended for support plan review to require consideration of all of the elements for involuntary admission, section 393.0651 would have expressly provided for it. See Olmstead, 44 So. 3d at 82.

The Agency contends that the statement of legislative purpose behind chapter 393 supports the finding of an implied obligation; however, the legislative purpose does not support that proposition. The legislative purpose stated in section 393.062 provides

> the development and implementation of community-based services that will enable individuals with developmental disabilities to achieve their greatest potential for independent and productive living, enable them to live in their own homes or in residences located in their communities, and permit them to be diverted or removed from unnecessary institutional placements.

The legislative purpose fails to address continued review of the appropriateness of an involuntary admission order because it does not take into account section 393.11(8)(b)3, which requires finding that an individual would be a danger to himself or others if he is allowed to remain at liberty. Section 393.0651 contains a stated goal similar to the legislative purpose discussed above: "The ultimate goal of each plan, whenever possible, shall be to enable the client to live a dignified life in the least restrictive setting, be that in the home or in the community." Like chapter 393's statement of legislative purpose, this goal does not address or imply the continued review of the appropriateness of an involuntary admission order. The Agency's argument that support plan review includes an implied requirement to review whether an involuntarily admitted person still qualifies for involuntary admission would require this Court to impermissibly rewrite the requirements of support plan review adopted by the Legislature.

Accordingly, we answer the first certified question in the negative because support plan review under section 393.0651 does not require the Agency to consider the continued propriety of an involuntary admission order entered under section 393.11.

**Circuit Court Release from Involuntary Admission**

We next answer the Eleventh Circuit's second certified question in the negative because the Agency is not required under either section 393.0651 or section 393.11, Florida Statutes, to petition the circuit court for a person's release from an involuntary admission order in cases where the Agency determines that the circumstances that led to the initial admission order have changed. Neither section 393.0651 nor section 393.11 can be construed to impose an implicit obligation on the Agency to petition the circuit court for a person's release from an involuntary admission order when the Agency determines that the circumstances that led to the initial admission order have changed.

Section 393.11(11) does not indicate who may petition the circuit court for a person's release from an involuntary admission; however, other subsections of section 393.11 explicitly provide for two circumstances for challenging involuntary admission orders. First, section 393.11(13) explicitly permits an involuntarily admitted person to petition the circuit court for a writ of habeas corpus to challenge the appropriateness of his involuntary admission. Second,

section 393.11(9)(b) explicitly provides that "[a]ny minor involuntarily admitted to residential services shall, upon reaching majority, be given a hearing to determine the continued appropriateness of his or her involuntary admission." Section 393.115(1)(b) builds on the procedure for dealing with minors in residential services upon reaching the age of majority. It provides that in the case of a voluntarily admitted minor turning eighteen, "[i]f the resident appears to meet the criteria for involuntary admission to residential services, as defined in s. 393.11, the agency shall file a petition to determine the appropriateness of continued residential placement on an involuntary basis." § 393.115(1)(b), Fla. Stat. (2011). As such, the Legislature explicitly provided for the Agency to file a petition with the circuit court to determine the appropriateness of involuntary admission in the case of a voluntarily admitted minor turning eighteen.

The Legislature, however, did not include a provision in section 393.11 regarding the Agency filing a petition with the circuit court under any circumstances. Instead, section 393.11 provides one reference to a petition being filed with the circuit court—the involuntarily admitted person's right to file a petition for a writ of habeas corpus challenging an involuntary admission order contained in section 393.11(13). Further, section 393.11 provides for one circumstance—a minor reaching the age of majority—in which an involuntarily admitted person is entitled to a review hearing. Nothing in section 393.11

indicates that the Agency has an obligation to file a petition with the circuit court for any reason. Because requiring the Agency to file a petition with the circuit court would impose an obligation on the Agency to undertake a specific act not required by statute, finding an implied obligation within section 393.11 that requires the Agency to file a petition based on an involuntary admission order no longer being appropriate would modify the express terms of an unambiguous statute.

Similarly, section 393.0651 does not contain any provisions that can be construed as requiring the Agency to file a petition with the circuit court for any reason. Section 393.0651 requires the Agency to do multiple things, such as consider specific factors during a support plan review, consider various residential placement options in a specified order, establish measurable goals for a client's progress, coordinate support plans for clients who are public school students with individual education plans, promulgate rules regarding the core components of support plans, and annually provide a written report to a client or the client's parent, guardian, or client advocate regarding the client's "habilitative and medical progress." Nowhere, though, in section 393.0651, is the Agency required—or even advised—to petition the circuit court for any reason.

The only reference to any type of review procedure mentioned in section 393.0651 is that a client or the client's parent, guardian, or client advocate may

seek administrative review of a support plan or the outcome of an annual support plan review. However, a successful administrative challenge to a support plan would presumably lead to a revised support plan rather than a petition being filed by the Agency with the appropriate circuit court for the client's release.

While neither section 393.0651 nor section 393.11 mentions who may petition the circuit court for review of an involuntary admission order when a client's circumstances change, other provisions of Florida law specifically address the periodic judicial review of various types of involuntary commitment orders. The Legislature has specifically addressed periodic judicial review in the context of secure detention of intellectually disabled persons under section 916.303(3), involuntary commitments of persons with mental illness under sections 394.4655(7) and 394.467(7), Florida Statutes, and involuntary commitments of sexually violent predators under sections 394.918(1), (3), Florida Statutes. Therefore, in certain contexts, the Legislature has exercised its prerogative to require periodic judicial review of involuntary commitment orders. See Olmstead, 44 So. 3d at 82. And we decline to assume that the Legislature forgot how to address periodic judicial review of involuntary admissions to residential services under chapter 393.

Further, as discussed above regarding the first certified question, the Agency is not required to even consider all of the elements required for involuntary

admission when conducting an annual support plan review under section 393.0651. Because requiring the Agency to file a petition with the circuit court would impose an obligation on the Agency to undertake a specific act not required by statute, finding an implied obligation within section 393.0651 that requires the Agency to petition the circuit court for the release from an involuntary admission order would modify the express terms of an unambiguous statute. Accordingly, we answer the second certified question in the negative because nothing in either section 393.0651 or section 393.11 can be construed to impose an implicit obligation on the Agency to petition the circuit court for a person's release from an involuntary admission order when the Agency determines that the circumstances that led to the initial admission order have changed.

**Analysis of Federal Constitutional Case Law**

We decline to answer the Eleventh Circuit's third certified question. Unlike the first two certified questions that ask us to interpret provisions of chapter 393, the third certified question asks us to analyze chapter 393 in light of federal constitutional case law and effectively resolve J.R.'s underlying federal constitutional claim. Because this certified question asks us to interpret federal law, we decline to answer it.

**CONCLUSION**

Based on the foregoing, we answer certified questions one and two in the negative and decline to answer certified question three. Having answered the first two certified questions and declining to answer the third, we return this case to the United States Court of Appeals for the Eleventh Circuit.

It is so ordered.

LEWIS, QUINCE, POLSTON, and PERRY, JJ., concur.
PARIENTE, J., dissents with an opinion.
CANADY, J., dissents with an opinion, in which PARIENTE, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

PARIENTE, J., dissenting.

I agree with the statutory construction analysis set forth in Justice Canady's dissent, which appropriately relies upon both the plain language of the statute and the interpretation of the statutory phrase "least restrictive" in the context of the statutory scheme to explain why the well-reasoned opinion of Judge Stafford in J.R. v. Hansen, No. 4:11cv417-WS, 2012 WL 1886438 (N.D. Fla. May 22, 2012), correctly interpreted chapter 393, Florida Statutes. I write to add to that matrix of statutory construction the cardinal principle that statutes should, whenever possible, be construed to ensure a constitutional outcome.

The clear and indisputable result of the majority's statutory interpretation, despite the majority's avoidance of it, will be a finding that the statute is unconstitutional. Yet, even though the constitutional question is at the heart of this

case, the majority declines in its statutory interpretation analysis to consider one of the fundamental principles of statutory construction—that courts must strive "to construe challenged legislation to effect a constitutional outcome whenever possible." Scott v. Williams, 107 So. 3d 379, 384 (Fla. 2013) (quoting Fla. Dep't of Revenue v. Howard, 916 So. 2d 640, 642 (Fla. 2005)). Further, courts are obligated to give statutes "a fair construction that is consistent with the federal and state constitutions as well as with the legislative intent." Caple v. Tuttle's Design-Build, Inc., 753 So. 2d 49, 51 (Fla. 2000) (quoting State v. Stalder, 630 So. 2d 1072, 1076 (Fla. 1994)).

The majority claims that because the first two certified questions do not ask this Court to resolve the ultimate issue of whether the statute is facially unconstitutional, it does not need to apply the presumption of constitutionality. See majority op. at 13 (declining to apply the principle that statutes should be interpreted in a way to uphold their constitutionality because the first two certified questions do not ask this Court to resolve the ultimate issue of constitutionality). However, the third certified question, which the majority declines to answer, asks exactly whether this statute is constitutional, and that is the ultimate issue the Eleventh Circuit Court of Appeals was asked to decide. See J.R. v. Hansen, 736 F.3d 959, 971-73 (11th Cir. 2013).

I simply do not see how the majority can ignore the constitutional implications of its analysis of a state statute that is being specifically attacked as facially unconstitutional and fail in its statutory interpretation to view the statute through the lens of the presumption of constitutional validity. For all these reasons, I join in Justice Canady's dissent. I would answer the first two certified questions in the affirmative and ensure that this Court's analysis of the statute is faithful to our obligation to construe statutes in a manner that upholds their constitutionality.

CANADY, J., dissenting.

I disagree with the majority's decision regarding the first two questions certified by the United States Court of Appeals for the Eleventh Circuit. I would answer both of those questions in the affirmative. I agree, however, with the majority's decision to decline to answer the third certified question, which is a question of federal law rather than Florida law.

The powers and duties of a state agency "include both those expressly given and those given by clear and necessary implication from the provisions of the statute" under which the agency operates. City Gas Co. v. Peoples Gas Sys., Inc., 182 So. 2d 429, 436 (Fla. 1965). It is an elementary principle of Florida law that "[w]hen authority is given by statute to accomplish a stated governmental purpose, there is also given by implication authority to do everything necessary to

- 24 -

accomplish the purpose that is not a violation of law or public policy." Bailey v. Van Pelt, 82 So. 789, 792 (Fla. 1919). These principles regarding the interpretation of the statutory powers and duties of governmental entities are, of course, based on a more general principle regarding the interpretation of statutory rights (or powers) and duties: " 'If a statute grants a right or imposes a duty, it also confers, by implication, every particular power necessary for the exercise of the one or the performance of the other.' . . . That which is clearly implied is as much a part of the law and is as effectual as that which is expressed." Girard Trust Co. v. Tampashores Dev. Co., 117 So. 786, 788 (Fla. 1928) (quoting Newcomb v. City of Indianapolis, 40 N.E. 919, 921-22 (Ind. 1895)). A statutory duty obviously carries with it a duty to take the particular steps reasonably necessary for the performance of the duty.

In his order granting the Agency's motion for summary judgment, Judge Stafford made the crucial determination that the statutory scheme "places an implicit burden on [the Agency], rather than the client, to petition the court for release from an order of involuntary admission when the conditions for release are indicated." J.R. v. Hansen, No. 4:11cv417-WS, 2012 WL 1886438, at *14 (N.D. Fla. May 22, 2012). The correctness of this determination flows ineluctably from three indisputable points. The first two points are based on express provisions of

the statute.  The third point is based on the meaning of "least restrictive" in the context of the statute.

First, section 393.0651(7), Florida Statutes (2011), requires that the Agency provide for an annual revision of each client's individual support plan.  There is no suggestion that a revised individual support plan is not intended to determine the provision of services by the Agency.  Second, under section 393.0651, a crucial focus of the individual support plan process is the identification of the least restrictive environment for the provision of services to a client.  Section 393.0651 leaves no doubt about the importance of identifying the least restrictive environment for the provision of services:

> Each plan must include the most appropriate, <u>least restrictive</u>, and most cost-beneficial environment for accomplishment of the objectives for client progress . . . .  The ultimate goal of each plan, whenever possible, shall be to enable the client to live a dignified life in the <u>least restrictive setting</u>, be that in the home or in the community.

§ 393.0651 (Emphasis added).  Third, services provided to an involuntarily admitted individual are provided in a more restrictive setting than are services provided to individuals who are not involuntarily admitted.  Indeed, the <u>most restrictive setting</u> for the provision of services is under an involuntary admission.

To reject Judge Stafford's conclusion, it must be assumed that the Legislature intended to require the Agency to have individual support plans developed and revised with a focus on ensuring that services are provided in the

least restrictive appropriate setting but did not intend to (a) require the annual review process to take into account that the context of an involuntary admission is more restrictive than other contexts, or (b) require the Agency to take the steps necessary to implement an individual support plan by seeking termination of an individual's involuntary admission when the statutory requirements for involuntary admission are no longer satisfied. This is nonsensical.

There is no cogent reason that the annual review process should be allowed—or required—to ignore the undeniable reality that an involuntary admission is more restrictive than other contexts in which services are provided. The annual review process for an involuntarily admitted individual can only determine the "least restrictive" appropriate setting for services if it considers whether the legal requirements for involuntary admission are still satisfied. Similarly, once it is determined that a less restrictive context than involuntary admission is the appropriate context for the provision of services, it necessarily follows that the Agency has a duty to take the steps necessary to ensure that services are provided in the less restrictive context, including petitioning the court for termination of the involuntary admission.

The "stated governmental purpose," Bailey, 82 So. at 792, of the statute is the provision of services in "the most appropriate, least restrictive" setting possible, section 393.0651, Fla. Stat. (2011). The duty placed on the Agency to

carry out that purpose necessarily carries with it "by implication" both the authority and the duty "to do everything necessary to accomplish the purpose that is not a violation of law or public policy." Bailey, 82 So. at 792. The Agency's consideration in the annual individual support plan review process of the appropriateness of continued involuntary admission and the Agency's action to obtain judicial termination when continued involuntary admission no longer constitutes the "most appropriate, least restrictive" environment for the provision of services are both essential to carrying out the unequivocal mandate of the statute. § 393.0651, Fla. Stat. (2011). There is no express provision of law or any public policy that stands in the way of such action by the Agency. Recognizing these aspects of the statutory scheme is simply acknowledging the plain import of the statute. Failing to recognize them results from a cramped, unreasonable reading of the statutory text.

The view that the legislative purpose set forth in section 393.0651 "does not take into account section 393.11(8)(b)3, which requires finding that an individual would be a danger to himself or others if he is allowed to remain at liberty[,]" majority op. at 16, improperly imports incoherence into chapter 393. There is absolutely no authority, however, to support the assumption that in enacting one statutory provision the Legislature is ignorant of other related statutory provisions. On the contrary, it is axiomatic that the Legislature is presumed to know the law.

See Holmes Cnty. Sch. Bd. v. Duffell, 651 So. 2d 1176, 1179 (Fla. 1995). And it is axiomatic that absent a clear inconsistency courts "must . . . construe related statutory provisions in harmony with one another." Villery v. Fla. Parole & Prob. Comm'n., 396 So. 2d 1107, 1111 (Fla. 1980) (superseded by statute as recognized by Van Tassel v. Coffman, 486 So. 2d 528, 529 (Fla. 1986)). The various provisions of chapter 393 therefore must be read harmoniously in light of the whole chapter.

Finally, the duty of the Agency under section 393.0651 is in no way circumscribed by the statutory provisions related to judicial review of involuntary admissions when a client reaches the age of majority, see § 393.115, Fla. Stat. (2011), or the provisions authorizing an involuntarily admitted person to petition for release, see § 393.11(13), Fla. Stat. (2011). These specific provisions are in no way inconsistent with the broad duty imposed by section 393.0651. The implication that they limit the reach of the duty imposed by section 393.0651 is not reasonable. That implication effectively rewrites the clearly established statutory duty of the Agency under section 393.0651. The annual review process is a critical feature of the statutory scheme designed to ensure the ongoing protection of the rights of the Agency's clients. It is neither necessary nor appropriate to truncate that process because the Legislature has adopted other specific statutory measures to help protect the rights of clients in particular circumstances.

I therefore dissent.

PARIENTE, J., concurs.

Certified Question of Law from the United States Court of Appeals for the Eleventh Circuit - Case No. 12-14212

Peter P. Sleasman and Kristen Cooley Lentz of the Florida Institutional Legal Services Project, Florida Legal Services, Inc., Newberry, Florida,

    for Appellant

Pamela Jo Bondi, Attorney General and Allen C. Winsor, Solicitor General, Tallahassee, Florida; and Juan Ricardo Collins of the Agency for Persons with Disabilities, Tallahassee, Florida,

    for Appellee