# Supreme Court of Florida

_____

No. SC15-2233
_____

**JOAN SCHOEFF, etc.,**
Petitioner,

vs.

**R.J. REYNOLDS TOBACCO COMPANY,**
Respondent.

[December 14, 2017]

QUINCE, J.

Joan Schoeff seeks review of the decision of the Fourth District Court of

Appeal in R.J. Reynolds Tobacco Co. v. Schoeff, 178 So. 3d 487 (Fla. 4th DCA

2015), on the ground that it expressly and directly conflicts with the First District

Court of Appeal's decision in R.J. Reynolds Tobacco Co. v. Sury, 118 So. 3d 849

(Fla. 1st DCA 2013), on the applicability of the comparative fault statute to Engle[1]

progeny cases. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

---

1. Engle v. Liggett Grp., Inc., 945 So. 2d 1246 (Fla. 2006).

We find that the comparative fault statute does not apply to Engle progeny cases in which the jury finds for the plaintiff on the intentional torts such that the compensatory damage awards in those cases are not subject to reduction. For the reasons that follow, we quash the Fourth District's decision on both the compensatory and punitive damages issues below and approve the First District's decision to the extent that it did not reduce compensatory damages under the comparative fault statute.

## FACTS AND BACKGROUND

In 1994, the Engle class action was filed against tobacco companies including R.J. Reynolds Tobacco Company (RJR). The class included all Florida smokers who had contracted diseases caused by smoking. The Engle class raised claims including strict liability, negligence, fraudulent concealment, and conspiracy. Engle v. Liggett Grp., Inc., 945 So. 2d 1246, 1255-57, 1257 n.4 (Fla. 2006). In the first phase of the trial, the jury determined that the tobacco companies were negligent, marketed defective cigarettes, and conspired to conceal the risks of smoking. Id. at 1277. In the second phase of the trial, the jury found the defendants were liable to three class representatives and awarded the class a

total of $145 billion[2] in punitive damages.  Id. at 1257.  The defendants appealed.

Id. at 1258.

On appeal, the Third District decertified the class and found the punitive

awards excessive.  Liggett Grp. Inc. v. Engle, 853 So. 2d 434, 442-58 (Fla. 3d

DCA 2003).  This Court agreed that the punitive awards were excessive and that

continued class treatment was not feasible "because individualized issues such

as . . . comparative fault . . . predominate."  Engle, 945 So. 2d at 1268.  This Court

also authorized members of the decertified class to file individual cases and held

that findings from the first phase of trial including defect, negligence, concealment,

and conspiracy would have res judicata effect in their individual cases.  Id. at

1269-70.

The district court below described the proceedings at trial in this case:

> R.J. Reynolds Tobacco Company ("RJR") appeals the final
> judgment entered in favor of Joan Schoeff Spolzino as Representative
> of the estate of her deceased husband, James Schoeff ("Plaintiff").
> RJR raises four issues on appeal.  First, it contends that the trial court
> erred in denying its motion for a directed verdict because Plaintiff
> failed to prove addiction causation.  Second, it asserts that certain
> comments made by Plaintiff's counsel during closing necessitate a
> new trial.  Third, it argues that the court erred in denying its motion to
> remit the jury's compensatory and punitive damages awards. Fourth,
> it argues that the court's application of the Engle findings violated its

---

2. RJR's share of this award was approximately $36 billion.  Engle v. R.J.
Reynolds Tobacco, No. 94-08273 CA-22, 2000 WL 33534572 (Fla. 11th Jud. Cir.
Ct. Nov. 6, 2000), rev'd sub nom. Liggett Grp. v. Engle, 853 So. 2d 434 (Fla. 3d
DCA 2003), approved in part and quashed in part, 945 So. 2d 1246 (Fla. 2006).

due process rights.  Plaintiff cross-appeals, arguing that the court erroneously reduced the jury's compensatory damages award based on Mr. Schoeff's comparative fault.  We reverse and remand for remittitur of the punitive portion of the judgment, and affirm in all other respects.

Background

a) Pleadings

The instant case is an Engle progeny case.  See Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006).  Plaintiff filed suit against RJR asserting membership in the Engle class because her husband died from lung cancer "caused by his addiction to cigarettes."  In her suit, Plaintiff alleged causes of action for strict liability, fraud by concealment, conspiracy to commit fraud by concealment, negligence, and gross negligence. She also admitted that Mr. Schoeff shared some fault for his smoking-related injuries and represented that she would "seek apportionment of fault, pursuant to the principles of comparative fault, on the counts for negligence and strict liability; however not with respect to the counts constituting intentional torts as pled in this action."

b) The Trial

The case proceeded to trial in two phases in the manner we approved in R.J. Reynolds Tobacco Co. v. Brown, 70 So. 3d 707, 714 (Fla. 4th DCA 2011).  In the first phase, the jury was asked to: 1) determine whether Mr. Schoeff was a member of the Engle class; 2) if so, whether RJR's conduct was the legal cause of his death; and 3) determine damages.  The jury was also asked to determine whether Plaintiff was entitled to punitive damages if it found against RJR on Plaintiff's claims for fraudulent concealment or conspiracy to fraudulently conceal.

After considering the evidence, the jury returned its verdict, finding that Mr. Schoeff was addicted to nicotine, his addiction was a legal cause of his lung cancer and death; and that the negligence of RJR as well as the defective and unreasonably dangerous cigarettes manufactured by RJR were a legal cause of Mr. Schoeff's lung cancer and death.  It allocated Mr. Schoeff's comparative fault for his injuries

- 4 -

at 25%. Additionally, the jury found that Mr. Schoeff detrimentally relied on statements made by RJR which concealed or omitted material information, and that such reliance was a legal cause of his cancer and death. Based on these findings, the jury awarded Plaintiff $10.5 million in compensatory damages and found that punitive damages were warranted.

The second phase of the trial concerned the proper amount of punitive damages. During closing arguments in this phase, Plaintiff's counsel asked the jury to award Plaintiff $25 million in punitive damages and no more. Specifically, counsel stated: "you may think that's too low, but we urge you not to go above that. Please do not go above 25 million. Do not. She doesn't want that. Do not go above that." Despite Plaintiff's urging, the jury returned a verdict assessing $30 million in punitive damages against RJR.

c) <u>Post-Trial Motions and Rulings</u>

Following the trial, RJR filed a motion asking the court to reduce the compensatory damages award to reflect the comparative fault assigned to Mr. Schoeff by the jury. Plaintiff filed a response in opposition arguing that the comparative fault statute should not apply since the jury found RJR committed the intentional tort of fraudulent concealment. Additionally, RJR moved for a new trial on evidentiary grounds. In the alternative, RJR moved for remittitur of both the compensatory and punitive damages awards, arguing that they were both excessive and not supported by the evidence.

Considering the above pleadings, the trial court granted RJR's motion to enter judgment consistent with the jury's finding on comparative fault, denied RJR's motion for a new trial, and denied RJR's motion to remit the compensatory and punitive damages awards. In granting RJR's motion to reduce the jury's compensatory award by Mr. Schoeff's comparative fault, the court ruled that Plaintiff waived her argument regarding comparative fault based on representations counsel made to the jury. Alternatively, the court ruled that even if Plaintiff had not waived her argument, the intentional tort exception to the comparative fault statute would not apply as Plaintiff's suit was a products liability suit at its core. In denying RJR's motion to remit the punitive damages award, the court recognized that there was no logical basis for the jury to award a larger amount than Plaintiff requested, but found that the jury's award

was "NOT infected by bias, prejudice, passion or any other sentiment against Defendant."

In accordance with its above rulings, the court entered final judgment awarding Plaintiff $7,875,000 in compensatory damages and $30 million in punitive damages, for a total of $37,875,000. This appeal follows.

Schoeff, 178 So. 3d at 488-90 (footnotes omitted). The Fourth District affirmed the trial court's denial of RJR's motion for a directed verdict, denial of the motion for a new trial, grant of RJR's motion to remit the jury's compensatory damages, and application of Engle findings to Mrs. Schoeff's case. Id. at 490.

The Fourth District also concluded that the $30 million punitive damages award was unconstitutionally excessive in light of the $10.5 million compensatory damages. Id. at 491. The decision further held that even if the punitive damages were not unconstitutional, remittitur was necessary under section 768.74(5)(e), Florida Statutes (2012), because Mrs. Schoeff had begged the jury not to award more than $25 million and a larger award "could [not] be adduced in a logical manner." Id. at 491-92 (quoting § 768.74(5)(e)). Finally, the Fourth District majority determined that the proper remedy for the punitive damages issue would be for the trial court to grant RJR's motion for remittitur or hold a new trial on punitive damages if RJR did not agree to the amount of the remittitur. Id. at 492.

Next, the district court rejected Mrs. Schoeff's cross-appeal regarding the trial court's reduction of compensatory damages, finding that she had waived the intentional tort exception by arguing comparative fault to the jury because no

reasonable jury could "possibly understand that its comparative fault determination was going to have no effect whatsoever on its compensatory damages award." Id. at 494. Reviewing the trial court's decision de novo, the majority also found that the comparative fault statute applies to Engle progeny cases in which the jury finds for the plaintiff on the intentional tort claims because Engle progeny cases are "grounded in negligence." Id. at 495-96. The majority acknowledged that its de novo standard of review created conflict with the First District's review for abuse of discretion in Sury. See id. (citing Sury, 118 So. 3d 849). The First District held in Sury that the comparative fault statute does not apply to Engle progeny cases in which the jury finds for the plaintiff on intentional tort claims because they sound in intentional tort rather than negligence. Sury, 118 So. 3d at 852. We accepted jurisdiction.

We first consider issues related to compensatory damages: the comparative fault statute, its intentional tort exception, and whether Mrs. Schoeff waived the intentional tort exception by arguing comparative fault of the smoker to the jury. We next consider whether the punitive damages were unconstitutionally excessive and whether the Fourth District properly found that the trial court abused its discretion in denying RJR's motion for remittitur on the punitive award.

- 7 -

**COMPENSATORY DAMAGES**

Whether the comparative fault statute applies to Mrs. Schoeff's case requires this Court to interpret the statute. Statutory interpretation is a pure question of law reviewed de novo. See Polite v. State, 973 So. 2d 1107, 1111 (Fla. 2007). We review for abuse of discretion the trial court's finding that Mrs. Schoeff's trial conduct prevented her from asserting the intentional tort exception. See Schoeff, 178 So. 3d at 492 (quoting R.J. Reynolds Tobacco Co. v. Hiott, 129 So. 3d 473, 475 (Fla. 1st DCA 2014)); Sury, 118 So. 3d at 851.

## I. Comparative Fault Statute

Before analyzing its plain meaning, this Court must determine which version of the comparative fault statute controls. The Fourth District held, and Mrs. Schoeff agrees, that the applicable statute is the 1992 version because it was in effect when the cause of action accrued in 1994. Schoeff, 178 So. 3d at 492 n.3 (citing Basel v. McFarland & Sons, Inc., 815 So. 2d 687, 691-96 (Fla. 5th DCA 2002)). RJR argues that the proper version of the statute is the 2011 version because the Legislature provided the following:

> This act is remedial in nature and applies retroactively. The Legislature finds that the retroactive application of this act does not unconstitutionally impair vested rights. Rather, the law affects only remedies, permitting recovery against all tortfeasors while lessening the ultimate liability of each consistent with this state's statutory comparative fault system, codified in s. 768.81, Florida Statutes.

Ch. 2011-215, § 3, Laws of Fla. (emphasis added). The 2011 version became effective June 23, 2011.

The Fourth District improperly relied upon Basel to find that the 1994 version was the proper version of the statute. Basel held that the 1999 version of the statute was not retroactive because it included no explicit language regarding retroactivity. Basel, 815 So. 2d at 691-96. The 2011 amendment explicitly provided for its retroactive application. The 2011 statute controls.

### A. Plain Meaning of the Comparative Fault Statute

The goal of statutory interpretation is to identify the Legislature's intent. Crews v. State, 183 So. 3d 329, 332 (Fla. 2015). To do so, this Court first consults the plain meaning of the statute's text. W. Fla. Reg'l Med. Ctr., Inc. v. See, 79 So. 3d 1, 9 (Fla. 2012). "When the statute is clear and unambiguous," we use the plain language of the statute and avoid rules of statutory construction to determine the Legislature's intent. Daniels v. Fla. Dept. of Health, 898 So. 2d 61, 64 (Fla. 2005); see also QBE Ins. Corp. v. Chalfonte Condo. Apt. Ass'n, 94 So. 3d 541 (Fla. 2012).

The comparative fault statute reduces defendants' liability by the percentage of fault of other culpable parties. § 768.81, Fla. Stat. (2011). The statute provides, "In a negligence action, contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for

- 9 -

an injury attributable to the claimant's contributory fault, but does not bar recovery." § 768.81(2), Fla. Stat. (2011). "Negligence action" is defined as "without limitation, a civil action for damages based upon a theory of negligence, strict liability, products liability, [or] professional malpractice." Id. § 768.81(1)(c). The intentional tort exception is codified in subsection (4) of the statute: "Applicability.-- This section does not apply . . . to any action based upon an intentional tort . . ." Id. § 768.81(4).

The plain language of the comparative fault statute is unequivocal: the comparative fault statute applies to an enumerated, but not exhaustive, list of negligence claims and "does not apply . . . to any action based upon an intentional tort." Id. This creates confusion for damages in Engle progeny cases because the same injuries—a smoker's illness or death and survivors' damages—are the result of both negligence and intentional torts. Generally, a defendant may not be required to pay twice for the same element of damages. See Dobbs v. Griffith, 70 So. 2d 317, 318 (Fla. 1954); Besett v. Basnett, 437 So. 2d 172 (Fla. 2d DCA 1983). Compensatory damages in Engle progeny cases cannot be allocated among the intentional tort and simple negligence claims without violating this rule against double damages. Therefore, if the comparative fault statute is applied to compensatory damages in Engle progeny cases, any reduction necessarily affects

- 10 -

damages arising from "action[s] based upon an intentional tort" in violation of the intentional tort exception, section 768.81(4), Florida Statutes.

RJR asks this Court to find that while individual intentional tort claims are exempted under subsection (4), comparative fault applies to entire cases that include both negligence and intentional tort claims because the list of claims which may comprise "negligence actions" is not limited to those enumerated negligence claims. We reject such a reading. If the comparative fault statute is applied to an Engle progeny case in which the jury finds for the plaintiff on both negligence and intentional tort claims, any reduction is necessarily applied to damages from "action[s] based upon an intentional tort" in derogation of the intentional tort exception of subsection (4).

RJR further contends that whether a case is a "negligence action" hinges on "[t]he substance of an action, not conclusory terms used by a party." § 768.81(1)(c), Fla. Stat. (2011). RJR argues the comparative fault statute applies to Engle progeny cases in which the jury finds for the plaintiff on intentional tort claims because the "substance" of the Engle progeny case is negligence. This interpretation disregards the fact that all Engle progeny defendants have already been found guilty of the intentional torts. See Engle, 945 So. 2d at 1277. The jury in Engle progeny cases is only charged with determining whether those intentional torts were a cause of the individual plaintiff's injury. Because reasonable minds

- 11 -

may disagree, we turn to canons of statutory construction and legislative history for further guidance.

## B. Canons of Construction and Legislative History

Where the statutory language is unclear or ambiguous, this Court applies rules of statutory construction to determine legislative intent. Polite, 973 So. 2d at 1111. A subsection must be read in the context of the whole. See Fla. Dep't of Envtl. Prot. v. ContractPoint Fla. Parks, LLC, 986 So. 2d 1260, 1264-65 (Fla. 2008). We endeavor to give effect to every word of a statute so that no word is construed as "mere surplusage." Heart of Adoptions, Inc. v. J.A., 963 So. 2d 189, 198-99 (Fla. 2007).

The 2011 version of the statute, in its entirety, provides the following:

> (1) DEFINITIONS.--As used in this section, the term:
> (a) "Accident" means the events and actions that relate to the incident as well as those events and actions that relate to the alleged defect or injuries, including enhanced injuries.
> (b) "Economic damages" means past lost income and future lost income reduced to present value; medical and funeral expenses; lost support and services; replacement value of lost personal property; loss of appraised fair market value of real property; costs of construction repairs, including labor, overhead, and profit; and any other economic loss that would not have occurred but for the injury giving rise to the cause of action.
> (c) "Negligence action" means, without limitation, a civil action for damages based upon a theory of negligence, strict liability, products liability, professional malpractice whether couched in terms of contract or tort, or breach of warranty and like theories. The substance of an action, not conclusory terms used by a party, determines whether an action is a negligence action.

- 12 -

(d) "Products liability action" means a civil action based upon a theory of strict liability, negligence, breach of warranty, nuisance, or similar theories for damages caused by the manufacture, construction, design, formulation, installation, preparation, or assembly of a product. The term includes an action alleging that injuries received by a claimant in an accident were greater than the injuries the claimant would have received but for a defective product. The substance of an action, not the conclusory terms used by a party, determines whether an action is a products liability action.

(2) EFFECT OF CONTRIBUTORY FAULT.--In a negligence action, contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for an injury attributable to the claimant's contributory fault, but does not bar recovery.

(3) APPORTIONMENT OF DAMAGES.--In a negligence action, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability.

(a) 1. In order to allocate any or all fault to a nonparty, a defendant must affirmatively plead the fault of a nonparty and, absent a showing of good cause, identify the nonparty, if known, or describe the nonparty as specifically as practicable, either by motion or in the initial responsive pleading when defenses are first presented, subject to amendment any time before trial in accordance with the Florida Rules of Civil Procedure.

2. In order to allocate any or all fault to a nonparty and include the named or unnamed nonparty on the verdict form for purposes of apportioning damages, a defendant must prove at trial, by a preponderance of the evidence, the fault of the nonparty in causing the plaintiff's injuries.

(b) In a products liability action alleging that injuries received by a claimant in an accident were enhanced by a defective product, the trier of fact shall consider the fault of all persons who contributed to the accident when apportioning fault between or among them. The jury shall be appropriately instructed by the trial judge on the apportionment of fault in products liability actions where there are allegations that the injuries received by the claimant in an accident were enhanced by a defective product. The rules of evidence apply to these actions.

(4) APPLICABILITY.--This section does not apply to any action brought by any person to recover actual economic damages resulting from pollution, to any action based upon an intentional tort, or to any cause of action as to which application of the doctrine of joint and several liability is specifically provided by chapter 403, chapter 498, chapter 517, chapter 542, or chapter 895.

(5) MEDICAL MALPRACTICE.--Notwithstanding anything in law to the contrary, in an action for damages for personal injury or wrongful death arising out of medical malpractice, whether in contract or tort, if an apportionment of damages pursuant to this section is attributed to a teaching hospital as defined in s. 408.07, the court shall enter judgment against the teaching hospital on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability.

§ 768.81, Fla. Stat. (2011).

One canon of construction requires this Court to presume that the Legislature intended the words it chose to include in the statute. Under the canon of construction expressio unius est exclusio alterius, we conclude that the Legislature purposefully excluded items not included in a list. Thayer v. State, 335 So. 2d 815, 817 (Fla. 1976). The Legislature enumerated, "without limitation," negligence claims which may be considered part of a "negligence action" and did not enumerate any intentional torts. § 768.81(1)(c), Fla. Stat. Expressio unius est exclusio alterius encourages this omission to be interpreted as purposeful. In fact, subsection (4) excludes intentional torts from coverage under the comparative fault statute and does not limit the exclusion to cases based on intentional tort claims alone.

- 14 -

The nature of the statute is also instructive in this case.  The comparative fault statute is a derogation of the common law.  Statutes that alter the common law are narrowly construed.  See Allstate Ins. Co. v. Rudnick, 761 So. 2d 289, 293 (Fla. 2000).  This Court presumes that when the Legislature alters common law by statute, the alteration is not intended beyond what was clearly specified in the statute.  See id.; Ady v. Am. Honda Fin. Corp., 675 So. 2d 577, 581 (Fla. 1996).  At common law, intentional torts are not reduced by comparative fault.  See Restatement (Third) of Torts: Apportionment of Liab. § 1 cmt. c (Am. Law Inst. 2000) ("Traditionally, a plaintiff's negligence was not a defense to intentional torts.").  The Legislature explicitly provided that a plaintiff's negligence may not serve as a comparative defense to an intentional tort in subsection (4).  Allowing RJR to reduce its liability on intentional torts by Mr. Schoeff's comparative fault is a broad interpretation which violates the canon of construction for derogations of the common law.

These tools of statutory interpretation favor a narrow interpretation of the comparative fault statute.  Therefore, the comparative fault statute does not apply to Engle progeny cases in which the jury finds for the plaintiff on the intentional tort claims.  Finally, we address caselaw concerning the comparative fault statute which is inapplicable to this and other Engle progeny cases.

**C. Comparative Fault Caselaw**

The Fourth District below relied on Merrill Crossings Associates v. McDonald, 705 So. 2d 560 (Fla. 1997), to support its finding that the comparative fault statute applies to Engle progeny cases because they are based on negligent conduct. Schoeff, 178 So. 3d at 495. In Merrill Crossings, we found that the comparative fault statute did not apply to a negligence action against a property owner because the action was based on an intentional tort—the shooting of a patron on the premises that was committed by a nonparty. Merrill Crossings, 705 So. 2d at 562-63. The First and Second District Courts of Appeal have relied on this same reasoning to find that the comparative fault statute does not apply to Engle progeny cases because they are based on intentional conduct. See Sury, 118 So. 3d at 852; Philip Morris USA v. Boatright, 217 So. 3d 166 (Fla. 2d DCA 2017). We find the Fourth District's reliance on Merrill Crossings in Engle progeny cases unfounded because the situations are distinguishable.

The issue in this and other Engle progeny cases is not whether a single negligence claim against the named defendants is based on the foreseeable intentional conduct of a nonparty as in Merrill Crossings. The question is whether an award resulting from both negligence and intentional torts may be reduced by the plaintiff's comparative fault. We find the situation in Mazzilli v. Doud, 485 So. 2d 477 (Fla. 3d DCA 1986), more applicable to Engle progeny cases. In

- 16 -

Mazzilli, the Third District refused to reduce the plaintiff's award by the percentage of the plaintiff's fault because the jury found for the plaintiff on an intentional tort count. Id. Similarly, when a jury finds for an Engle progeny plaintiff on intentional tort claims, the plaintiff's award may not be reduced by comparative fault. See Mazzilli, 485 So. 2d at 480. Because the jury found for Mrs. Schoeff on the intentional tort claims in this case, her compensatory award may not be reduced unless she waived the intentional tort exception.

## II. Waiver

The Fourth District concluded that the comparative fault statute applied to Mrs. Schoeff because she waived the intentional tort exception by her conduct at trial. We review the trial court's finding of waiver for abuse of discretion. See Sury, 118 So. 3d at 851. A party may waive a legal right, "whether secured by contract, conferred by statute, or guaranteed by the Constitution." DK Arena, Inc. v. EB Acquisitions I, LLC, 112 So. 3d 85, 97 (Fla. 2013) (quoting Gilman v. Butzloff, 22 So. 2d 263, 265 (Fla. 1945)). Waiver of a right can be accomplished by "taking action inconsistent with that right" during trial. O'Keefe Architects, Inc. v. CED Constr. Partners, Ltd., 944 So. 2d 181, 185 n.4 (Fla. 2006). Waiver of the intentional tort exception has been considered in many Engle progeny cases.

In finding waiver, the Fourth District relied upon R.J. Reynolds Tobacco Co. v. Hiott, 129 So. 3d 473, 475 (Fla. 1st DCA 2014), and Philip Morris USA, Inc. v.

Green, 175 So. 3d 312 (Fla. 5th DCA 2015). In Hiott, the First District held that the trial court did not abuse its discretion in reducing an Engle progeny plaintiff's award because she had "encouraged the jury, from voir dire through closing argument, that she accepted that her deceased husband was partially at fault for his smoking-related illness and death." Hiott, 129 So. 3d at 481. The jury in Hiott had been instructed not to reduce its compensatory award because of the fault allocated to the smoker because "[t]he Court will enter a judgment based on your verdict and will reduce the total amount of damages by the percentage of fault which you charge to [the smoker]." Id. (emphasis removed). The plaintiff "failed to inform the jury that she intended to reserve her right to assert the inapplicability of comparative fault to any of her claims." Id. at 480-81. The First District concluded that the jury might have reached a different verdict on damages had it known that the tobacco company would bear the full amount of damages, contrary to the jury instructions. Id. at 481-82. Similarly, in Green, the Fifth District found the comparative fault statute applicable where the plaintiffs made similar arguments to the jury. Green, 175 So. 3d at 315-16.

In contrast, the First District found in Sury that the trial court did not abuse its discretion in finding that the Engle progeny plaintiff did not waive the intentional tort exception under different facts. Sury, 118 So. 3d at 851. The plaintiff's complaint in Sury "clearly and specifically sought 'potential

- 18 -

apportionment of fault and damages on all counts other than those alleging intentional torts.' " Id. The Sury plaintiff "never argued to the jury or the court that the damages for his father's terminal illness should be reduced by his portion of fault." Id. The defendants also "agreed to the verdict form which listed each cause of action, including the intentional torts, and requested the jury to indicate whether the defendants had committed each individual tort or not." Id.

Like the plaintiff in Sury, Mrs. Schoeff's complaint stated that she would seek apportionment based on comparative fault "on the counts for negligence and strict liability; however not with respect to the counts constituting intentional torts as pled in this action." Schoeff, 178 So. 3d at 489. The verdict form also listed the intentional torts after the interrogative about apportionment, which immediately followed the negligence claims. The Fourth District below did not consider that, as in Sury, the defendants in this case agreed to the verdict form which asked the jury to determine whether Mr. Schoeff's smoking was a result of each of the negligent and intentional tort offenses the Engle jury found RJR to have committed.

We disagree with the Fifth District in Green and the First District in Hiott to the extent they held that the intentional tort exception is waived when an Engle progeny plaintiff argues comparative fault on the negligence counts, and we reject the Fourth District majority's theory of waiver below. Based on the foregoing, we

- 19 -

find that the trial court abused its discretion in finding that Mrs. Schoeff waived the intentional tort exception.

## PUNITIVE DAMAGES

Lastly, the Fourth District concluded that the punitive damages award was unconstitutionally excessive. "[A] trial court's determination as to whether a punitive damage award exceeds the boundaries of due process as guaranteed by the Unites States Constitution is reviewed by a court under a de novo standard." Engle, 945 So. 2d at 1263 (citing Cooper Indus. Inc., v. Leatherman Tool Group, Inc., 532 U.S. 424, 436 (2001)). In contrast, a trial court's determination of whether a damage award is excessive, requiring a remittitur or a new trial under Florida law, is reviewed for abuse of discretion. Engle, 945 So. 2d at 1263 (citing St. John v. Coisman, 799 So. 2d 1110, 1114 (Fla. 5th DCA 2001)). We first evaluate the constitutionality of the jury's punitive award before turning to the trial court's denial of remittitur.

## I. Constitutionality of Punitive Damages

The United States Supreme Court requires that review of a punitive damages award include consideration of three guideposts to determine whether the award is unconstitutionally excessive:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference

- 20 -

between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

Id. at 1264 (quoting State Farm Mutual Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418 (2003)). Reprehensibility is "the most important indicium of the reasonableness of a punitive damages award." BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 575 (1996). A court must give substantial deference to the Legislature's comparable civil penalties when considering whether damages are excessive. Id. at 587. This Court has held that "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." Engle, 945 So. 2d at 1265 (quoting Campbell, 538 U.S. at 425). We examine each factor.

## A. Reprehensibility

The reprehensibility component of our analysis is supported by the fact that RJR increased the addictive qualities of cigarettes, concealed their health defects, and widely marketed their defective product for profit. Id. at 1277. The harm in this case was both physical and economic, done with reckless disregard for the health or safety of others, involved repeated actions, and was the result of intentional deceit. These factors lead to the conclusion that this conduct is among the most reprehensible. See Campbell, 538 U.S. at 419.

**B. Relationship between Actual or Potential Harm and Punitive Damages**

To evaluate the relationship between damages and harm, the punitive award is compared to the actual or potential harm suffered, not actual harm alone. See Philip Morris USA v. Williams, 549 U.S. 346, 354 (2007). RJR contends that the punitive damages must be considered alongside the total punishment RJR "has or will probably receive from other sources," including "past and future liability in [similar] cases." Owens-Corning Fiberglas Corp. v. Ballard, 749 So. 2d 483, 485, 488 (Fla. 1999). In addition, RJR contends that federal due process requires the same broad inspection of RJR's liability. See Campbell, 538 U.S. at 423. RJR also notes that we previously found the $145 billion award for the Engle class excessive in Engle, 853 So. 2d at 457 n.29, and that RJR's share of that award was $36 billion, and asks this Court to consider that RJR is a defendant in most Engle progeny cases. RJR argues that if 1200 Engle progeny cases result in $30 million awards like the one in this case, the cumulative award would be excessive under Engle. While that may be true, RJR has not demonstrated that it is the defendant in 1200 Florida Engle progeny cases or that $30 million punitive damages awards are common in Engle progeny cases. In fact, the record demonstrates that a $30 million award would be among the highest Engle progeny punitive damages awards in Florida. The single award of $30 million in this case is less than one one-hundredth of a percent of RJR's share of the award we found excessive.

While among the highest <u>Engle</u> progeny punitive awards in Florida, the punitive award in this case falls within a 3-to-1 ratio when compared to the compensatory award. <u>Schoeff</u>, 178 So. 3d at 491-92 (comparing <u>R.J. Reynolds Tobacco Co. v. Buonomo</u>, 138 So. 3d 1049 (Fla. 4th DCA 2013) ($25 million punitive versus $5.235 million compensatory damages); and <u>R.J. Reynolds Tobacco Co. v. Martin</u>, 53 So. 3d 1060 (Fla. 1st DCA 2010) ($25 million punitive damages versus $3.3 million compensatory damages); with <u>R.J. Reynolds Tobacco Co. v. Townsend</u>, 90 So. 3d 307, 313 (Fla. 1st DCA 2012) ($40.8 million punitive damages found unconstitutionally excessive compared to $10.8 million compensatory award)). Given the ratios in other cases, the ratio of punitive to compensatory damages in this case is not unconstitutionally excessive.

**C. Comparison of Punitive Damages and Civil Penalties in Comparable Cases**

In comparable cases, the civil penalty is often three times the compensatory award. <u>See, e.g.</u>, § 768.73(1)(a)1., Fla. Stat. (2011). The unreduced compensatory award in this case is roughly one third the jury's punitive damages. The trial court found that the $30 million award was not unconstitutionally excessive and properly deferred to the jury's discretion, declining to sit as a seventh juror. <u>See</u> <u>Bould v. Touchette</u>, 349 So. 2d 1181, 1184-85 (Fla. 1977); <u>R.J. Reynolds Tobacco Co. v. Webb</u>, 93 So. 3d 331, 336 (Fla. 1st DCA 2012) (quoting <u>Dyes v. Spick</u>, 606 So. 2d 700, 702 (Fla. 1st DCA 1992)) ("The trial court does not sit as a seventh juror.

- 23 -

Neither does the reviewing court reserve the prerogative to overturn a damages verdict with which it merely disagrees.")). Based on the foregoing, and with the understanding that RJR's conduct is among the most reprehensible, we reverse the Fourth District's finding that the punitive damages award in this case was unconstitutionally excessive.

## II. Whether the Trial Court Properly Denied Remittitur of the Punitive Damages

The Fourth District also held that remittitur was appropriate under section 768.74(5), Florida Statutes (2012), because Mrs. Schoeff's counsel asked the jury not to exceed $25 million in punitive damages. We evaluate a denial of remittitur for abuse of discretion. We have held that a trial court should not disturb a jury's punitive damages for a personal tort unless the amount is unreasonable. Bould, 349 So. 2d at 1184-85. Florida's remittitur and additur statute lists factors important to the evaluation of a punitive award, including whether the amount can be logically adduced by a reasonable jury. § 768.74(5)(a)-(e), Fla. Stat. A punitive damages award must also bear some relationship to the defendant's ability to pay and should not result in the defendant's bankruptcy. Engle, 945 So. 2d at 1263-64. Punitive damages must also be reviewed alongside compensatory damages "to ensure a reasonable relationship between the two." Id. at 1264. Florida courts have frequently held "that a jury might properly award damages equal to or in excess of those requested by counsel in closing argument." Lopez v. Cohen, 406

- 24 -

So. 2d 1253, 1256 (Fla. 4th DCA 1981) (citing Braddock v. Seaboard Air Line R.R. Co., 80 So. 2d 662 (Fla. 1955)); see also Philip Morris USA, Inc. v. Cuculino, 165 So. 3d 36, 39 (Fla. 3d DCA 2015).

In reviewing Mrs. Schoeff's award, the trial court found that the award was not influenced by undue passion or prejudice against the defendant, see section 768.74(5)(a), Florida Statutes, and found that the award did not warrant remittitur, despite the fact that there was no reason for the jury to have ignored Mrs. Schoeff's request not to exceed a $25 million award. The Fourth District found that the trial court abused its discretion and reversed its denial of RJR's motion for remittitur because of its note regarding the jury's decision to exceed Mrs. Schoeff's request. Schoeff, 178 So. 3d at 492-93. The Fourth District found that the award could not "be adduced in a logical manner by reasonable persons" because the jury had exceeded requested damages. Id. at 493 (quoting § 768.74(5)(e), Fla. Stat. (2012)).

We find that this single factor is insufficient to render an award excessive. The fact that the jury exceeded requested damages does not render the award itself unreasonable or excessive. See Braddock, 80 So. 2d at 662; Lopez, 406 So. 2d at 1256. Furthermore, the trial court only noted that the jury's decision to exceed requested damages was unreasonable, but did not find that the award could not be adduced by a reasonable jury as section 768.74(5)(e), Florida Statutes, requires. The trial court found the award free from undue prejudice. See § 768.74(5)(a), Fla.

Stat.  There is no contention that the jury ignored evidence or misconceived the merits of the case relating to damages.  See § 768.74(5)(b), Fla. Stat.  There is no dispute that the damages in this case are based on evidence, not determined by speculation or conjecture.  See § 768.74(5)(c), Fla. Stat.  At less than three times the amount of the compensatory damages, the punitive damages also bear a reasonable relationship to the injury.  See § 768.74(5)(d), Fla. Stat.  In addition, there is no suggestion that RJR does not have the ability to pay.  See Engle, 945 So. 2d at 1263-64.  The trial court did not abuse its discretion in denying RJR's motion for remittitur.  The Fourth District, however, erred in ordering a remittitur or new trial.

## CONCLUSION

Based on the foregoing, we quash the decision below and approve the First District in Sury to the extent that it held that the intentional tort exception applies to Engle progeny cases in which the jury finds for the plaintiff on intentional tort claims such that compensatory damages may not be reduced by comparative fault. We quash the Fourth District's findings that Mrs. Schoeff waived the intentional tort exception, that the punitive damages award was unconstitutionally excessive, and that the trial court abused its discretion in denying RJR's motion for remittitur.

It is so ordered.

LABARGA, C.J., and LEWIS, J., concur.
PARIENTE, J., concurs in result with an opinion.

POLSTON, J., concurs in result.
LAWSON, J., concurs in part and dissents in part with an opinion, in which
CANADY, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND,
IF FILED, DETERMINED.

PARIENTE, J., concurring in result.

I fully agree with the majority that the clear and unambiguous language of

the statute indicates that "the comparative fault statute does not apply to Engle [v.

Liggett Grp., Inc., 945 So. 2d 1246 (Fla. 2006),] progeny cases in which the jury

finds for the plaintiff on the intentional torts such that the compensatory damage

awards in those cases are not subject to reduction."   Majority op. at 2.  I write

separately to address two concerns with the majority's analysis.

First, I would not address whether the 2011 comparative fault statute applies

retroactively.  See majority op. at 8.  It is immaterial "which version of the

comparative fault statute controls" in this case as the intentional tort exception is

substantively the same under both the 1992 and 2011 versions of the statute.

Majority op. at 8; see § 768.81, Fla. Stat. (2011); id. (1992).  To the extent any

changes in the statute affect substantive rights, the applicable statute would be the

one in effect when the cause of action accrued.  See Menendez v. Progressive

Express Ins. Co., Inc., 35 So. 3d 873, 877 (Fla. 2010) ("[E]ven where the

Legislature has expressly stated that a statute will have retroactive application, this

- 27 -

Court will reject such an application if the statute impairs a vested right, creates a new obligation, or imposes a new penalty.").

The major changes to the comparative fault statute, overruling our decision in D'Amario v. Ford Motor Co., 806 So. 2d 424 (Fla. 2001), are not at issue in this case. And, from my point of view, the issue in this case yields the same outcome no matter which version of the statute is applied. Thus, I concur in the majority's result but not in its determination that the 2011 version of the statute applies because there may be cases where the amended version impairs substantive rights, rendering retroactive application of the statute unconstitutional. See Menendez, 35 So. 3d at 877.

Second, while the majority reviews the trial court's finding of waiver for an abuse of discretion, see majority op. at 17, it is clear that when the facts are not in dispute, we review a question of law de novo. See, e.g., Townsend v. R.J. Reynolds Tobacco Co., 192 So. 3d 1223, 1225 (Fla. 2016); R.J. Reynolds Tobacco Co. v. Hiott, 129 So. 3d 473, 479 (Fla. 1st DCA 2014); see also, e.g., Fla. Ins. Guar. Ass'n v. Branco, 148 So. 3d 488, 493 (Fla. 5th DCA 2014); Truly Nolen of Am., Inc. v. King Cole Condo. Ass'n, Inc., 143 So. 3d 1015, 1017 (Fla. 3d DCA 2014). In this case, it is undisputed that Mrs. Schoeff would "seek apportionment of fault, pursuant to the principles of comparative fault, on the counts for negligence and strict liability; however not with respect to the counts constituting

intentional torts as pled in this action." Majority op. at 4 (quoting R.J. Reynolds Tobacco Co. v. Schoeff, 178 So. 3d 487, 489 (Fla. 4th DCA 2015)). Reviewing the issue of waiver de novo, I would conclude, consistent with the majority, that the trial court erred in finding that Mrs. Schoeff waived the intentional tort exception. See majority op. at 19.

For all these reasons, I concur with the result reached by the majority.

LAWSON, J., concurring in part and dissenting in part.

I fully concur in the portion of the majority's opinion dealing with punitive damages and also agree with the majority that the 2011 version of the comparative fault statute applies to this case. In all other respects, I dissent. Because the plain language of the 2011 comparative fault statute hinges its application on a determination of the substance of an "action," as opposed to individual "causes of action," the trial court properly reduced the compensatory award by the plaintiff's percentage of fault, and the Fourth District properly affirmed as to this issue.

Section 768.81, Florida Statutes, provides for a reduction in damages based upon "fault" attributable to the plaintiff in "a negligence action." § 768.81(2), Fla. Stat. (2011) (emphasis added). The statute further defines a negligence "action" as "a civil action for damages based upon a theory of negligence, strict liability, products liability, [or] professional malpractice." § 768.81(1)(c) (emphasis added). Comparative fault does not apply to an "action based upon an intentional tort." §

- 29 -

768.81(4) (emphasis added). And, the statute plainly directs that "[t]he substance of an <u>action</u>, not conclusory terms used by a party, determines whether an action is a negligence action." § 768.81(1)(c) (emphasis added). As correctly argued by Respondent and implicitly recognized by the trial judge and the Fourth District, the word "action" refers to an entire judicial proceeding or suit, whereas a "cause of action" refers to an individual claim. See <u>Black's Law Dictionary</u>, 35 (10th ed. 2014) (defining an "action" as a "judicial proceeding, which, if conducted to a determination, will result in a judgment or decree" and explaining that the word "action" is "nearly if not quite synonymous" with the term "suit," with "lawyers usually speak[ing] of proceedings in courts of law as 'actions,' and of those in courts of equity as 'suits' ") (first quoting 1 Morris M. Estee, <u>Estee's Pleadings, Practice, and Forms</u> § 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885); then quoting Edwin E. Bryant, <u>The Law of Pleading Under the Codes of Civil Procedure</u> 3 (2d ed. 1899)). In Florida, we combine proceedings in law and equity, and generally use the term "action" rather than "suit" to describe both. See Fla. R. Civ. P. 1.040 ("There shall be one form of action to be known as 'civil action.' ").

The word "action" is used throughout the Florida Rules of Civil Procedure, not just in rule 1.040, to describe an entire "proceeding" or "suit." For example, the initial rule declares the scope of our rules as follows: "These rules apply to all actions of a civil nature . . . [with several enumerated exceptions] . . . . [and] shall

be construed to secure the just, speedy, and inexpensive determination of every action." Fla. R. Civ. P. 1.010. Rule 1.050 then declares that "[e]very action of a civil nature shall be deemed commenced when the complaint or petition is filed." Fla. R. Civ. P. 1.050. The next rule provides that "[i]f it should appear at any time that an action is pending in the wrong court of any county, it may be transferred to the proper court." Fla. R. Civ. P. 1.060(a). I could keep quoting our own rules, but it is abundantly clear from the first few alone that, in Florida, we use the word "action" the same way that the rest of the American legal system does: to mean an entire suit and not an individual cause of action. One additional rule is worth considering, to drive home the point:

> A pleader may set up in the same action as many claims or causes of action or defenses in the same right as the pleader has, and claims for relief may be stated in the alternative if separate items make up the cause of action, or if 2 or more causes of action are joined.

Fla. R. Civ. P. 1.110(g).

There can be no question that the Legislature was aware of our civil procedure rules when it chose its language for the comparative fault statute, because the statute itself plainly references them. See § 768.81(3)(a)1. ("In order to allocate any or all fault to a nonparty, a defendant must affirmatively plead the fault . . . in accordance with the Florida Rules of Civil Procedure."). It is also clear that the Legislature understood the term "cause of action" because it plainly used that phrase as well. See § 768.81(4) (exempting from comparative fault several

- 31 -

statutory "cause[s] of action" such as those related to securities fraud, antitrust violations, and criminal racketeering laws). Engle cases do not involve any of the enumerated causes of action exempted from comparative fault by the statute. See id.; Engle v. Liggett Grp., Inc., 945 So. 2d 1246, 1255, 1276-77 (Fla. 2006) (listing the class-action findings in support of certain causes of action that would apply in individual cases brought by members of the decertified class pursuant to this Court's decision in Engle).

Determining the "substance" of an "action" is not a wholly unfamiliar legal concept, see, e.g., Merrill Crossings Assocs. v. McDonald, 705 So. 2d 560, 563 (Fla. 1997) (applying section 768.81and holding that damages should not be reduced based upon plaintiff's fault because the "the substance of this action was an intentional tort, not merely negligence"), even where multiple causes of action are alleged. See, e.g., Pera v. Kroger Co., 674 S.W.2d 715, 719 (Tenn. 1984) (stating that "the gravamen[3] of an action, rather than its designation as an action for tort or contract, determines the applicable statute of limitations"); Schuchart & Assocs., P.E., Inc. v. Solo Serve Corp., 540 F. Supp. 928, 937-38 (W.D. Tex.

---

3. There is no meaningful difference between the words "substance" and "gravamen" in this context, although most legal writers seem to prefer the term "gravamen." See Black's Law Dictionary, 817 (10th ed. 2014) (defining "gravamen" as "[t]he substantial point or essence of a claim, grievance, or complaint"). The Florida Legislature simply chose the more vernacular term.

1982) (finding that although "Plaintiffs have carefully separated their different causes of action against multiple defendants . . . into separate counts," the "gravamen of Plaintiffs' action is infringement of copyright"); McClure v. McClure, 403 S.E.2d 197, 198 (W. Va. 1991) ("The gravamen of the complaint's multiple counts was that [the defendant] had caused her husband's death . . . ."). And, to be clear, our comparative fault statute plainly directs courts to determine whether the action is a negligence action based upon the "substance of [the] action," § 768.81(1)(c), which is exactly what this court did in Merrill Crossings.

Where a plaintiff alleges both negligence and intentional tort causes of action in the same suit and a defendant raises the plaintiff's comparative fault in defense, the substance of the action could be decided by the trial judge (like any other pretrial dispute),[4] if the parties do not agree. In this case, however, where the plaintiff agreed to submit the fault issue to the jury and conceded some fault, the plaintiff consented to treating the case as a negligence action and effectively waived any post-verdict argument that the damages amount should not be reduced—again, as properly found by the Fourth District in this case and by the

_____

4. This Court in Merrill Crossings treated its determination of the nature of the action as an issue of law, see 705 So. 2d at 563, and I agree. Where the gravamen of the plaintiff's complaint is injury caused by a defendant's product, this should be a simple legal determination. The trial judge in this case certainly saw the issue as simple and clear. He stated: "To argue the genesis of Engle was not founded in tort, and thus . . . subject to reducing the verdict [for comparative fault] is to argue in the theater of the absurd."

- 33 -

First and Fifth Districts in <u>R.J. Reynolds Tobacco Co. v. Hiott</u>, 129 So. 3d 473, 475 (Fla. 1st DCA 2014), and <u>Philip Morris USA, Inc. v. Green</u>, 175 So. 3d 312, 315-16 (Fla. 5th DCA 2015), respectively.

The majority recognizes the potential for jury "confusion" created by reading "action" to mean an individual claim or "cause of action" in a case like this one, where the plaintiff alleges both negligence and intentional tort theories of recovery for a single injury (for which there can be only one measure of damages awarded). This unnecessary confusion would be properly avoided if we followed the simple rule that "where a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense." <u>State v. Brake</u>, 796 So. 2d 522, 528 (Fla. 2001) (citing <u>State v. Mitro</u>, 700 So. 2d 643, 645 (Fla. 1997)). Action simply does not mean cause of action—and we should give the word its ordinary meaning. <u>Id.</u>

In fact, the only way to end up viewing this statute as meaning anything else is to start the inquiry by considering whether the Legislature intended something other than what it said. Although there is authority for this approach, I view it as improper for the simple reason that it is inconsistent with our most basic rule of statutory construction:

> [W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.

- 34 -

Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984) (quoting A.R. Douglass, Inc. v. McRainey, 137 So. 157, 159 (Fla. 1931)). As this rule directs, our first (and often only) step in statutory construction is to ask what the Legislature actually said in the statute, id., based upon the common meaning of the words used. Brake, 796 So. 2d at 528. The importance of this rule as our primary directive for statutory construction can be understood only if one understands its grounding in our Constitution, which was cogently explained in Holly v. Auld:

> [C]ourts of this state are "without power to construe an unambiguous statute in a way which would extend, modify, or limit[] its express terms or its reasonable and obvious implications [because to] do so would be an abrogation of legislative power."

Id. at 219 (emphasis omitted) (quoting Am. Bankers Life Assurance Co. of Fla. v. Williams, 212 So. 2d 777, 778 (Fla. 1st DCA 1968)).

Unfortunately, despite this Court's cogent explanation of a "textualist" approach to statutory construction and the constitutional mandate for its primacy, Florida lawyers and judges have been conditioned to, in practice, first ask what the Legislature intended by its enactment rather than what the Legislature actually said in its statute. This conditioning derives from our overuse of the oft-quoted maxim that "the polestar of statutory construction is legislative intent." This maxim does have its place, and this Court has explained it: "Where reasonable differences arise as to the meaning or application of a statute, the legislative intent must be the polestar of judicial construction." Lowry v. Parole & Probation Comm'n, 473 So.

- 35 -

2d 1248, 1249 (Fla. 1985) (citing Tampa-Hillsborough Cty. Expressway Auth. v. K.E. Morris Alignment Servs., Inc., 444 So. 2d 926 (Fla. 1983); Tyson v. Lanier, 156 So. 2d 833 (Fla. 1963)); see also State ex rel. Davis v. Rose, 122 So. 225, 233 (Fla. 1929) (explaining that "ambiguous terms [in a statute] should be so applied and interpreted in the light of the legislative intent as revealed in the act").  In other words, legislative intent may be the most critical aid in some cases.  But, "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the [secondary] rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning."  Holly, 450 So. 2d at 219.  In this regard, the word "polestar" provides an apt visual.  A "polestar . . . also spelled pole star" is "the brightest star that appears nearest to either celestial pole at any particular time."  Polestar, Encyc. Britannica, http://www.britannica.com/topic/polestar (last visited November 28, 2017).  Because a polestar appears stationary relative to the horizon in the night sky, it can be used to navigate an unmarked expanse of land or sea, in the dark.  The word perfectly illustrates the proper use of legislative intent—a critical guide for construing an unclear statute.  By contrast, reading a "clear and unambiguous . . . [statute that] conveys a clear and definite meaning" is like walking a marked path on a clear day—where looking up to ponder unseen stars makes no sense, and could send you stumbling off the marked path.

Yet, Florida's appellate courts have for decades routinely framed the statutory construction task in general (for all cases) as starting with the "legislative intent as polestar" maxim.  See, e.g., J.R. v. Palmer, 175 So. 3d 710, 716 (Fla. 2015) (quoting Diamond Aircraft Indus., Inc. v. Horowitch, 107 So. 3d 362, 367 (Fla. 2013)); Bankston v. Brennan, 507 So. 2d 1385, 1387 (Fla. 1987) ("The polestar of statutory construction is, of course, legislative intent.") (emphasis added).  We next explain that "legislative intent" is discerned "primarily from the text of the statute."  Palmer, 175 So. 3d at 716.  Then we generally quote Holly for the rule that there is no occasion for resorting to rules of statutory construction when the meaning is clear and obvious from the words alone.  Id.  This construct improperly and confusingly elevates a secondary rule of construction to a primary position, but is harmless in most cases because we regularly explain that intent is determined primarily from the text of the statute—and that the inquiry should end with the text when it is clear and unambiguous.  However, there is a potential harm.

The harm lies in the risk that by focusing first on the more amorphous concept of intent, we are more likely to read into the language our own subjective experiences and biases—assuming unintentionally and subconsciously that the

Legislature would have intended the meaning that intuitively strikes us as correct.[5] This case is a perfect example.

In my experience over thirty years, lawyers and judges almost always address individual causes of action on a count-by-count basis. The law permits pleading as many legal theories in separate counts as are supported by the facts, and even allows a plaintiff to state inconsistent causes of action in some cases. Then, the defense will frequently raise challenges (by motion) on a count-by-count basis—and judges look separately at each cause of action and the law related to each separate legal theory when making their rulings. With this background, my instinctive reaction to the question of whether the plaintiff here pled a negligence action or an intentional tort action was that the question was obviously framed incorrectly because the plaintiff pled both negligence and intentional tort causes of action. Not surprisingly, then, when I first considered the arguments presented in these briefs and read through the words in this statute, I read the statute as calling

5. Clinical neuroscience research supports this assertion. <u>See generally</u> Antonio R. Damasio, <u>The Somatic Marker Hypothesis and the Possible Functions of the Prefrontal Cortex</u>, 351 Phil. Transactions B: Biological Sci. 1413, 1413-20 (1996). Antonio Damasio is an internationally renowned neuroscientist who teaches at the University of Southern California and directs the University's Brain and Creativity Institute. <u>Antonio Damasio - Faculty Profile</u>, USC Dornsife, http://dornsife.usc.edu/cf/faculty-and-staff/faculty.cfm?pid=1008328 (last visited November 28, 2017). The Institute for Scientific Information has designated him a "Highly Cited Researcher." <u>Id.</u> His best-selling book <u>Descartes' Error: Emotion, Reason, and the Human Brain</u> (1994), also addresses this subject, and meets scientific standards.

for a count-by-count determination of the substance of each cause of action pled. Based on my experience, it simply did not occur to me that the Legislature would have <u>intended</u> anything else and, unfortunately, I have also been conditioned to approach every statute by first asking what the Legislature "intended." It was not until I stepped away from the case and came back to it later—refocusing on this language and undertaking the mental exercise of asking what the statute actually said—that I saw what is clear: This statute unambiguously directs that we determine the "substance of the action," which can only mean the substance of the suit as a whole, given the words used.

Once this became clear, I then saw what was so obvious to the judge who tried this case and heard all of the evidence, including the plaintiff's admissions of fault for comparative liability purposes: It would be "absurd" to treat this products liability case as anything other than a "negligence action" under this statute (which expressly defines products liability as a negligence action) when the plaintiff's use of the defendant's product provides the necessary causal link to the plaintiff's singular injury and the singular compensatory damages award. As noted by the trial judge, the defendant's intentional conduct (a conspiracy to conceal the dangers of smoking, as found by a prior jury and binding in this case) is primarily relevant to the secondary issue of punitive damages. Of course, the jury will have

also considered the defendant's intentional conduct in setting the comparative fault percentages.

It makes no sense to present all of the conduct, both negligent and intentional (again, primarily through prior binding findings), tell the jury to allocate fault for the purpose of adjusting the damage award, and then not reduce the compensatory damage award based upon the plaintiff's percentage of fault. With a singular injury and singular damage award, there is no way to reduce damages for negligence counts and not reduce damages for intentional tort counts. If the majority is correct and the presence of an intentional tort cause of action means that no fault reduction can be made, then at least in Engle cases (where the intentional conduct jury findings were made before the start of trial), the jury should not be asked to determine the plaintiff's percentage of fault at all. In other words, whether to allow the comparative fault reduction in this case has to be decided based upon the substance of the action because you cannot both reduce and not reduce a singular damage award.

Although this is clear from the plain language of the statute, such that the inquiry could properly end here, I will also note that the Legislature's intent is apparent, and that it supports the same conclusion. The Legislature originally enacted this statute to abolish joint and several liability in favor of a comparative fault system for all "negligence cases," which it defined as including "products

liability . . . whether couched in terms of contract or tort, or breach of warranty and like theories." Ch. 86-160, § 60, Laws of Fla. (emphasis added).[6] Then, when this Court ruled that comparative fault did not apply to damages for injuries caused by product defects in certain scenarios, in D'Amario v. Ford Motor Co., 806 So. 2d 424 (Fla. 2001), the Legislature amended the statute to "overrule D'Amario . . . [to effectuate its intent that] in a products liability action as defined in this act, fault should be apportioned among all responsible persons." Ch. 2011-215, § 2, Laws of Fla. Ironically, the failure to first focus exclusively on what this statute actually says results in a holding that once again, as in D'Amario, thwarts the Legislature's intent.

---

6. Use of the word "cases" in earlier versions of section 768.81 points to the Legislature's concern with the overall judicial proceeding, rather than individual causes of action. See § 768.81(4), Fla. Stat. (2001, 2006). Before 2011, section 768.81 used the terms "case" and "action" interchangeably. E.g., § 768.81, Fla. Stat. (2006) (referring in subsection (2) to "an action to which this section applies" and in subsection (3) to "cases to which this section applies," while specifying in subsection (4) that "[t]his section applies to negligence cases," defined as "civil actions" based on certain theories). The 2011 amendments consolidated the terminology in favor of the word "action." See generally § 768.81, Fla. Stat. (2011). A Senate staff analysis of the 2011 amendments supports the view that this change was due to a terminology preference, not a shift in meaning: the only comment about the change in terminology in the staff analysis is that "[t]he bill . . . change[d] the term 'negligence cases' to 'negligence action' " and "revis[ed] the definition [of that term] slightly." Fla. S. Comm. on Com. & Tourism, CS/SB 142 (2011) Staff Analysis 8 (Feb. 7, 2011), available at http://flsenate.gov/Session/Bill/2011/142/Analyses/2011s0142.cm.PDF.

Finally, it is also worth considering the other reason why the trial judge would have viewed plaintiff's argument against making a comparative fault reduction as absurd: One of the primary considerations for this Court's decision to decertify the <u>Engle</u> class and allow these individual actions to proceed was that "individualized issues such as . . . comparative fault . . . predominate." <u>Engle</u>, 945 So. 2d at 1268. Accordingly, not only is the majority's holding as to the comparative fault issue contrary to the plain language of the comparative fault statute, it is contrary to the <u>Engle</u> Court's recognition that case-specific comparative fault reductions are required in <u>Engle</u> progeny cases.

For these reasons, I would affirm the Fourth District's decision as to this issue. I would also encourage this Court and other appellate judges to return the "intent as polestar" maxim back to its proper place as a critical secondary inquiry to be performed, when appropriate, only after a studied analysis of what a statute actually says.

CANADY, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

    Fourth District - Case No. 4D13-1765

    (Broward County)

John S. Mills and Courtney Brewer, The Mills Firm, P.A., Tallahassee, Florida; Alex Alvarez, The Alvarez Law Firm, Coral Gables, Florida; Gary M. Paige, Gordon & Doner, Davie, Florida; Laurie J. Briggs and T. Hardee Bass III of

Searcy Denney Scarola Barnart & Shipley, PA, West Palm Beach, Florida; and Robert S. Glazier of Law Office of Robert S. Glazier, Miami, Florida,

     for Petitioner

Donald B. Ayer, Jones Day, Washington, D.C. and Charles R.A. Morse, Jones Day, New York, New York; Robert C. Weill and Eric L. Lundt of GrayRobinson, P.A. Fort Lauderdale, Florida,

     for Respondent

Gary M. Farmer, Sr. of Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, Fort Lauderdale, Florida,

     Amicus Curiae Florida Justice Association

Celene H. Humphries, Steven L. Brannock, Maegen P. Luka, and Thomas J. Seider, Brannock & Humphries, Tampa, Florida,

     Amicus Curiae Engle Plaintiffs' Firms